```
 1 │ UNITED STATES DISTRICT COURT
   │ SOUTHERN DISTRICT OF NEW YORK
 2 │ -------------------------------------x
 3 │ UNITED STATES OF AMERICA,
   │
 4 │                                          11 CR 626
 5 │     -vs-
   │                                          VOSR/SENTENCING
 6 │
   │ LEONARD BAMBERG,
 7 │
   │                             Defendant.
 8 │ -------------------------------------x
 9 │                               United States Courthouse
10 │                               White Plains, New York
11 │                               November 10, 2022
12 │ Before, THE HONORABLE CATHY SEIBEL, District Judge
13 │
   │ A P P E A R A N C E S :
14 │
   │ DAMIAN WILLIAMS
15 │     United States Attorney for the
   │     Southern District of New York
16 │ BY:  KEVIN SULLIVAN
   │     Assistant United States Attorney
17 │
18 │ LAW OFFICE OF JOHN S. WALLENSTEIN
   │ BY:  JOHN WALLENSTEIN
19 │     Attorney for Defendant
20 │
   │ ALSO PRESENT:
21 │
   │ USPO Erin Weinrauch
22 │
23 │
24 │
25 │
```

DARBY GINSBERG, RPR (914) 390-4102

111022.1                              Proceedings

1              THE DEPUTY CLERK:  The Honorable Cathy Seibel

2    presiding.  United States v. Bamberg.

3              THE COURT:  Good morning, Mr. Sullivan, Officer

4    Weinrauch, Mr. Wallenstein, Mr. Bamberg.

5              Everyone can have a seat.

6              MR. WALLENSTEIN:  Good morning, Judge.

7              THE COURT:  We were here about a month ago.

8    Mr. Wallenstein needed some time to get up to speed.

9              How would you like to proceed, Mr. Wallenstein?

10             MR. WALLENSTEIN:  Your Honor, at this time my client

11   is prepared to enter an admission to specifications two and

12   seven of the violation of supervised release, and we would be

13   prepared to proceed to sentencing today.

14             THE COURT:  All right.  Is there any agreement with

15   the government other than I assume they will drop the remaining

16   specs?

17             MR. WALLENSTEIN:  Other than dropping the remaining

18   specs, no, there is no further agreement.

19             THE COURT:  That's your understanding as well,

20   Mr. Sullivan?

21             MR. SULLIVAN:  Yes, Your Honor.

22             THE COURT:  All right.  Let me ask Mr. Clark to place

23   Mr. Bamberg under oath.

24   LEONARD BAMBERG, the defendant, having been duly sworn,

25   testified as follows:

111022.1                          Proceedings

1             THE DEPUTY CLERK:  You can have a seat.  Please state

2   your full name for the record and spell out the last name

3   slowly.

4             THE DEFENDANT:  Leonard Bamberg, B-A-M-B-E-R-G.

5             THE COURT:  Mr. Bamberg, do you understand that you

6   are now under oath, and if you answer any of my questions

7   falsely, your false answers could later be used against you in a

8   separate prosecution for perjury or making a false statement?

9             THE DEFENDANT:  Yes.

10            THE COURT:  How old are you?

11            THE DEFENDANT:  Thirty-seven.

12            THE COURT:  How far did you go in school?

13            THE DEFENDANT:  GED in Ray Brook, FCI.

14            THE COURT:  So you are able to read, write, speak, and

15  understand English?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Are you now, or have you recently been,

18  under the care of a doctor or mental health professional?

19            THE DEFENDANT:  No.

20            THE COURT:  Have you ever been treated for any mental

21  illness or any type of addiction?

22            THE DEFENDANT:  No.

23            THE COURT:  In the past 24 hours, have you taken any

24  drugs, medicine or pills or drunk any alcohol?

25            THE DEFENDANT:  No.

1              THE COURT:  Is your mind clear today?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Are you feeling all right?

4              THE DEFENDANT:  Yeah.

5              THE COURT:  All right.  Have you had enough time to

6  discuss the petition for violation of supervised release with

7  Mr. Wallenstein?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And do you understand what your rights

10 are?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Are you satisfied with Mr. Wallenstein and

13 his representation of you?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand that you have the right

16 to dispute the charges in the petition, and that if you did, you

17 would be entitled to a hearing at which the government would

18 have the burden of proving the charges?

19             THE DEFENDANT:  Yes.

20             THE COURT:  And do you understand that hearing would

21 not be in front of a jury; it would be in front of me?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And do you understand the burden of proof

24 would not be beyond a reasonable doubt, but it would rather be

25 by a preponderance of the evidence, meaning that the government

111022.1                      Proceedings

```
 1  would have to prove to my satisfaction that it was more likely
 2  than not that you violated your supervised release?  Do you
 3  understand that?
 4            THE DEFENDANT:  Yes.
 5            THE COURT:  And do you understand that at that hearing
 6  and at every stage of the case you are entitled to be
 7  represented by a lawyer, and if you could not afford a lawyer,
 8  one would be appointed to represent you for free?
 9            THE DEFENDANT:  Yes.
10            THE COURT:  Do you understand that if you admit to the
11  violations and I accept your admission, you will be giving up
12  your right to a hearing, and we will go right to sentencing just
13  on the basis of your admissions?
14            THE DEFENDANT:  Yes.
15            THE COURT:  And do you understand there will be no
16  appeal as to whether you did or did not violate your supervised
17  release?
18            THE DEFENDANT:  Yes.
19            THE COURT:  Do you understand that if you were to
20  admit to specifications two and seven, I could sentence you to
21  as much as five years' imprisonment and lifetime supervised
22  release?
23            THE DEFENDANT:  Yes.
24            THE COURT:  So that's the statutory maximum.  The most
25  I could give you is five years' imprisonment and lifetime
```

111022.1                        Proceedings

 1 ‖ supervised release.  Do you understand that?

 2 ‖          THE DEFENDANT:  Yes.

 3 ‖          THE COURT:  And do you understand there are sentencing

 4 ‖ guidelines that recommend 37 to 46 months' imprisonment, but I

 5 ‖ don't have to follow them?

 6 ‖          THE DEFENDANT:  Yes.

 7 ‖          THE COURT:  Now, you are serving a state indeterminate

 8 ‖ sentence of three to six years; is that correct?

 9 ‖          THE DEFENDANT:  Yes.

10 ‖          THE COURT:  And do you understand that the sentence I

11 ‖ impose could run consecutive to that sentence, meaning it would

12 ‖ be added on to the end of that sentence?

13 ‖          THE DEFENDANT:  Yes.

14 ‖          THE COURT:  Do you understand that if your lawyer or

15 ‖ anyone else has attempted to predict what your sentence would be

16 ‖ or estimate what your sentence would be, their estimate or

17 ‖ prediction could be wrong?

18 ‖          THE DEFENDANT:  Yes.

19 ‖          THE COURT:  And do you understand that even if your

20 ‖ sentence is not what you expected or not what you hoped for, you

21 ‖ will be bound by your admissions, and you will not be allowed to

22 ‖ withdraw your admissions?

23 ‖          THE DEFENDANT:  Yes.

24 ‖          THE COURT:  Other than the government's promise to

25 ‖ drop specifications one, three, four, five, and six, has anyone

111022.1                                Proceedings

1   made any promise to you or offered you any inducements to admit

2   to the specifications?

3                THE DEFENDANT:  No.

4                THE COURT:  Has anyone threatened you or forced you or

5   coerced you to admit to the specifications?

6                THE DEFENDANT:  No.

7                THE COURT:  Has anyone made a promise to you as to

8   what your sentence will be?

9                THE DEFENDANT:  No.

10               THE COURT:  Is it true that on or about October 27,

11  2021, in Yonkers, you committed the state crime of unlicensed

12  operation of a motor vehicle because you were driving without a

13  valid license?

14               THE DEFENDANT:  Yes.

15               THE COURT:  And when you did that, did you understand

16  that you were violating the conditions of your supervised

17  release?

18               THE DEFENDANT:  Yes.

19               THE COURT:  And is it also true that on or about

20  January 30th, 2022, also in Yonkers, you committed the state

21  crime of robbery third degree in that you forcibly stole

22  property?

23               THE DEFENDANT:  Yes.

24               THE COURT:  And when you did that, did you understand

25  you were violating the conditions of your supervised release?

1                THE DEFENDANT:  Yes.

2                THE COURT:  Does either side think I should ask any

3    further questions about the facts?

4                MR. SULLIVAN:  No, Your Honor.

5                MR. WALLENSTEIN:  No, Your Honor.

6                THE COURT:  All right.  Then I accept the admissions,

7    and we will proceed to sentencing.

8                Does the government want to be heard?

9                MR. SULLIVAN:  Yes, Your Honor.

10                So, of course, on a VOSR we look to the 3553(a)

11    factors that are enumerated in Section 3583(e) of 18 U.S.C.

12    Among them, and I will begin with nature and circumstances of

13    the offense conducts here.  The offense conducts here, across

14    both sets of instances -- both the unlicensed operation of the

15    motor vehicle in or about November of 2021, and then the further

16    robbery in January of 2022 -- was undoubtedly a serious breach

17    of trust of the Court.

18                This defendant, as the Court is well aware, has a long

19    history before the Court on supervised release.  He was -- this

20    is, in fact, his third appearance before Your Honor on a

21    violation petition.  As Your Honor of course recalls, last year

22    there was a petition that was withdrawn.  From my understanding

23    of what transpired there, there was an uncooperative complaining

24    victim in connection with self-conduct of the defendant in that

25    case.  That probation -- that petition was withdrawn in July of

1   2021.

2          We fast-forward four months to November of 2021, and

3   the defendant was arrested for unlicensed operation of a motor

4   vehicle, observed making an illegal U-turn, and the car is

5   pulled over, and as we understand from Yonkers PD, the passenger

6   in the car is defendant's father-in-law, so to speak, who

7   admitted to having a backpack containing narcotics in the car.

8          And as Your Honor observed at the initial presentment

9   on that original violation, while, okay, this is unlicensed

10  operation of an motor vehicle, one, what is this defendant doing

11  knowing he doesn't have a license driving a car?  But then two,

12  just the optics of this, being in a car with a backpack full of

13  heroin really is not the way to be spending your time as

14  somebody on federal supervised release.  So that's the November

15  conduct.

16         And on being arraigned on those specs he is released

17  on bail, and we fast-forward just a mere two and a half months

18  or so to January, and once again, behind the wheel of a vehicle.

19  We see an extreme escalation in this defendant's conduct.  There

20  is an incident involving another car where it appears that the

21  defendant's car rear-ended the other car in the parking lot of

22  an Auto Zone in Yonkers, and as normal people do, you get out

23  and you exchange information.  You are going to take a look at

24  the damage and call the police, but this defendant was going to

25  have none of that.

1          After the person he hit tried to get him to cooperate,

2   he takes out a cellphone, photographs the damage to his rear

3   bumper, called the police, and what does this defendant do?

4   Doesn't pull out his insurance card, take out his phone and

5   exchange a number.  He pulls out a knife and holds it to the

6   victim's throat, takes his phone.  Throws it to the ground,

7   chucks it over a wall, and then speeds off.

8          He is only arrested by the police a short time later

9   after another reported hit and run with a vehicle that was

10  matching his description with a license plate that matched the

11  beginning letters that the victim could recall from the Auto

12  Zone incident.

13         And so this is extremely serious offense conduct.  It

14  shows an escalation in this defendant's behavior while on

15  supervised release.  It shows a complete disregard for abiding

16  by the conditions imposed while on supervised release and the

17  extreme breach of the Court's trust.

18         And what's really shocking to the government is

19  despite in the course of not even a full year, but this being

20  the third incident after two appearances before Your Honor.  And

21  frankly, you know, I will call it for what it is, narrowly

22  evading greater exposure here.  We have the first withdrawn

23  petition from summer of 2021; we have the car stop with a car

24  full of heroin that the father-in-law takes responsibility for,

25  none of that has provided deterrence to this defendant.

1          And he has demonstrated a repeated pattern that poses

2    a risk to public safety.  And so when you look at the 3553(a)

3    factors, the need to afford adequate deterrence, to protect the

4    public from further harm of this defendant, it's not clear to me

5    that already the substantial term of incarceration he has served

6    on his underlying criminal conviction, the prior term of

7    supervised release, none of that has achieved any modicum of

8    deterrence of this defendant's behavior.  It has not protected

9    the public from future harm.

10          And for those reasons, Your Honor, the government and

11   probation are recommending a guidelines sentence of 37 months

12   and to run concurrent with -- I am sorry.

13          THE COURT:  Obviously, you don't mean that.

14          MR. SULLIVAN:  No.  Consecutive, Your Honor, to the

15   three to six months the defendant had received on the underlying

16   robbery three conviction in the state.

17          THE COURT:  Three to six years.

18          MR. SULLIVAN:  I'm sorry.  Three to six years, Your

19   Honor.

20          THE COURT:  You are recommending 37 months consecutive

21   to the three to six years?

22          MR. SULLIVAN:  That is correct, Your Honor.

23          THE COURT:  Are you recommending further supervision?

24          MR. SULLIVAN:  Yes, Your Honor.  The government does

25   agree with probation's recommendation that an additional term of

1  supervision is warranted.  I believe that term is two years is

2  the recommendation, which the government agrees with.

3         This defendant has a long way to go.  In the initial

4  appearance last year on the very first violation concerning the

5  domestic violence-related incident, Your Honor admonished the

6  defendant he needs to attend an anger management session; that

7  he needs to be diligent about that, and that was over a year

8  ago.  This defendant would certainly benefit from continued

9  supervision and from the good resources of probation on that

10  extended term of supervision.

11         THE COURT:  Thank you, Mr. Sullivan.

12         Mr. Wallenstein?

13         MR. WALLENSTEIN:  Thank you, Your Honor.  I don't

14  disagree that what Mr. Bamberg has done is serious, but I do

15  think that he has demonstrated some remorse here; that he is

16  truly sorry for what he has done.  He wrote Your Honor a letter

17  in August, which I am sure the Court has read.

18         THE COURT:  Yes.  I don't know if the government has

19  seen it, actually.

20         Have you seen the letter dated August 7th?

21         MR. SULLIVAN:  I don't believe I have, Your Honor.

22         THE COURT:  Let me ask Mr. Clark to hand it to

23  Mr. Sullivan.  I think he may have sent it just to counsel.

24         MR. WALLENSTEIN:  That is possible, Judge.  I received

25  it from Mr. Facciponte, but actually not until this week.  I

1   will give Mr. Sullivan a chance to read it before I continue.

2            MR. SULLIVAN:  Thank you, Your Honor.

3            MR. WALLENSTEIN:  So I think, Judge, that that more

4   than adequately expresses Mr. Bamberg's remorse here.

5            As you can see, he has support.  His family is here,

6   including his child.  His mother and his fiancée are here to

7   support him.

8            THE COURT:  His mother?  He told probation his mother

9   died in 1996.

10           MR. WALLENSTEIN:  I am sorry.  His mother-in-law.

11  Forgive me.  My error.

12           But Mr. Sullivan emphasizes the seriousness of the

13  robbery.  Let me point out that -- without minimizing the fact

14  that it is a serious offense, and he has admitted it in the

15  state court, and he is doing three to six for it -- no one was

16  hurt.  It seems more like an anger management issue that

17  escalated.  He had an argument over a minor fender-bender.

18  Mr. Bamberg got angry, grabbed the cellphone, smashed the phone,

19  threw it over the fence, and drove off.  Technically, under New

20  York law that is a robbery.

21           THE COURT:  Well, aren't you leaving out the part

22  about the knife to the throat?

23           MR. WALLENSTEIN:  Well, I don't know how much of that

24  detail is accurate, but in any event, he has -- he has paid the

25  price for that because he is doing three to six.

1        If Your Honor sentences him as the government seeks,

2  to 37 months consecutively, what's going to happen is that the

3  state is going to keep him to the end of his -- certainly to his

4  conditional release date, which would be four years, and

5  potentially to the full amount of the six years based on this

6  conduct, and then he would start serving his federal sentence.

7  Right now he is here on a writ, which means he is a state

8  prisoner.  He's getting credit for the state time.  I don't know

9  how much federal time he is getting, and he's been here since

10 last winter, I believe, in federal custody.

11       I don't know how much of that time he is getting

12 credit for and --

13       THE COURT:  I don't think he is -- he is obviously not

14 going to get credit on the federal side for any time that the

15 state is crediting him.

16       MR. WALLENSTEIN:  Well, he's doing state time.

17       THE COURT:  Well, if he is here on a writ, it's all

18 being credited toward the three to six.

19       MR. WALLENSTEIN:  That's -- I hope so.

20       In any event, I am asking you to sentence him

21 concurrently.  If Your Honor intends to sentence him to

22 37 months, the guideline sentence, I am asking that it run at

23 least partially concurrently because I don't think he should do

24 more than the three to six that he is doing for basically the

25 same conduct.  I recognize the distinction between the state

1  crime and the breach of this Court's trust involved in the

2  violation of supervised release, but I do think that a sentence

3  of three to six years on which he is likely to do four years

4  considering that there will be another sentence now, is more

5  than sufficient, and even greater than necessary, although you

6  can't do much about what the state will actually hold him for.

7          So I think that the Court should structure a sentence

8  that sees that he gets no more than four years, which would be,

9  I think, no more than a year and a day if you are going to run

10 it consecutively or any time up to 37 if you want to run it

11 concurrently.  That's what I am asking you to do.

12         With respect to specification two, driving without a

13 license is in and of itself not particularly serious, and the

14 drugs in the backpack in the car belonged to his father-in-law.

15 I don't think anybody can prove otherwise, and that is the facts

16 as we know them.  So to hold him responsible for that is I think

17 unfair.  He is responsible for driving without a license.

18 That's what he did.  That's what he's admitted to doing, and I

19 don't think that that is particularly deserving of any

20 additional time over and above the robbery, which is clearly

21 more serious.

22         So my request, Your Honor, is that you sentence him,

23 as I indicated earlier, either concurrently with his state time

24 or, if consecutively, to no more than an additional year to run

25 consecutively to the state time.

1           THE COURT:  Thank you, Mr. Wallenstein.

2           Mr. Bamberg, if there is anything you would like to

3   say before I sentence you, I will hear you now.

4           THE DEFENDANT:  No.  Truthfully, Your Honor, you know,

5   I have been here multiple times.  I know I ain't the likeable

6   person in this courtroom due to the fact that I came here

7   multiple times.  I do accept all responsibilities for my

8   actions.  I just, you know, gratefully apologize for wasting the

9   Court's time.  I came to these decisions and let my emotions

10  supersedes my intelligence.  Truthfully, I got no words for how

11  disappointed I am in myself for these actions.  I am a father

12  now, so it's like, you know, I got a bigger responsibility that

13  I want to get back to.

14          As the prosecutor did say, I did -- you know, could

15  have handled it differently, you know, but as -- you know, as it

16  is now, I can't -- I can't take back what I had done.  I can

17  only accept responsibility.  I just ask, you know, Ms. Seibel,

18  if you could please run it concurrent so I can get back to my

19  daughter, provide for her as a father.

20          I can't -- I can't express how deeply I am towards

21  this whole situation, and I got nothing else to say.  I mean, I

22  apologize.

23          THE COURT:  Thank you, Mr. Bamberg.

24          The sentencing guidelines are only advisory.  Whether

25  I should sentence within, above, or below that range turns on

1   the Section 3553(a) factors that are incorporated in 3583(e).

2          First is the nature and circumstances of the offense.

3   Specification two, as Mr. Wallenstein points out, is not that

4   big a deal.  Driving without a license obviously is bad and

5   something you shouldn't do, but more troubling is that the

6   defendant was driving around with a drug dealer.  I mean, you

7   shouldn't drive without a license ever, but you certainly

8   shouldn't do it while you are on supervised release, and you

9   certainly shouldn't do it in the company of a drug dealer.

10          The specification seven is, as all parties agree, much

11  more troubling.  Maybe the reason Mr. Bamberg went so nuts is

12  because he knew that that collision was going to get him in even

13  more trouble here because there he was driving without a license

14  again at the time where he had already been brought before this

15  Court.  Let's see, this was January of 2022.  And at that time

16  there was a petition pending based on what had happened in

17  October.  So I'm sure Mr. Bamberg knew he was asking for trouble

18  by driving without a license again, and that the collision might

19  come to this Court's attention.

20          But instead of just facing the music or accepting

21  responsibility, as he now has done, he decided to go nuts.  And

22  this is occurring at a time where he knew he was going to be a

23  father in a couple of months, and it is very worrisome in terms

24  of protection of the public.  I think Mr. Wallenstein is correct

25  that nobody was hurt, but I can only imagine how terrified this

1  poor guy was who didn't do anything wrong and was victimized in

2  this serious way by Mr. Bamberg.

3          The next factor is the history and characteristics of

4  the defendant.  I went back and looked at Mr. Bamberg's

5  presentence report, and he certainly was failed by the adults in

6  his life as a child.  His mother was an alcoholic.  He got put

7  in foster care.  His father was violent.  His father was in

8  prison.  His father basically took him away from his mother.

9  Well, took him out of foster care, but kept him away from his

10 mother; abused him; blamed him for things that the father's

11 addicted girlfriend did, and that sort of thing can mess you up

12 good.  And it clearly messed Mr. Bamberg up good because he's

13 had -- his whole life has been a series of arrests for some

14 serious stuff, and he got a ten-year sentence in this court, and

15 that does not appear to have been sufficient for him to change,

16 and it is very hard without help to deal with the sorts of

17 problems that Mr. Bamberg faced as a kid.

18         And Mr. Bamberg went to anger management, and he went

19 to drug treatment, and they don't seem to have done the trick.

20 I don't want to say that Mr. Bamberg dodged a bullet previously

21 because I don't have any evidence that he was, in fact, guilty

22 of the assault on the girlfriend, and I don't have any evidence

23 that he has any responsibility for the drugs that were in his

24 car.  So I don't mean to suggest that he was guilty of those

25 things and got away with them.  What I do mean to suggest is

1   both of those experiences should have reminded Mr. Bamberg of

2   the need while on supervised release to make sure you don't do

3   anything wrong.

4              THE DEFENDANT:  Focus up.

5              THE COURT:  I'm sorry?

6              THE DEFENDANT:  To focus up, right?

7              THE COURT:  To focus up, and that didn't happen.

8              So there is a lot to be sympathetic about in

9   Mr. Bamberg's background, but there is also a lot to be

10  concerned about because it does not seem that even a very

11  substantial federal sentence has made him realize that you need

12  to play by the rules if you want to stay out of prison.

13             I have to consider deterrence.  Frankly, I am not sure

14  Mr. Bamberg can be deterred.  If ten years didn't do it, I don't

15  know what will.  So I don't give a lot of weight to specific

16  deterrence.

17             General deterrence is always an issue, particularly

18  with supervised release.  People need to understand when you are

19  on supervised release, you've gotta play by the rules, and the

20  consequences are real if you don't.

21             Protecting the public from further crimes is the issue

22  that looms largest here.  Despite having gone through anger

23  management, Mr. Bamberg was not able to access whatever

24  techniques he learned there to control himself, and he did

25  something really serious, and it may be that a lot of what's

1    going on with him psychologically is not his fault.  In fact, I

2    am sure a lot of it's not his fault.  And it's always a shame in

3    that situation because, you know, here we are faced with

4    somebody who is what now, 38 I think Mr. Bamberg said?  Yeah.

5    And -- almost 38, and he is dangerous.  It's really hard to

6    balance the sympathy you have for somebody who probably is that

7    way because of how he was treated as a kid with the need to

8    protect the public.

9            I've considered the guidelines range.  Obviously, the

10   breach of trust here looms large.  It should have been front of

11   mind to Mr. Bamberg.  He actually had a petition pending at the

12   time of the robbery that, as I have said -- I am speculating --

13   but maybe that's why he reacted the way he did because he knew

14   he had a petition pending, but that kind of thinking is very

15   dangerous.  What you should be thinking at that time is, well, I

16   have a petition pending.  I blew it.  I cannot make it worse by

17   holding a knife to somebody's face or stealing their stuff.

18           You know, Mr. Bamberg wrote me this letter in August,

19   and I'm sure being a father has changed him, and I'm sure he

20   wants to be a better father than his own father was, but this is

21   serious stuff, and although he is serving a serious sentence,

22   the breach of trust to this Court requires an additional

23   sanction.  I don't think 37 months is necessary, though.  That

24   would essentially be -- I can't know if Mr. Wallenstein's

25   speculation about the effect it would have on the state

1  sentence, you know, is going to pan out that way, but I don't

2  think even if the best case scenario for Mr. Bamberg is

3  37 months would be doubling his state sentence, and that does

4  not seem necessary to me.

5           But given the seriousness of the offense and the need

6  to protect the public, the shortest sentence that I can abide

7  here is 18 months to run consecutive to the state sentence, and

8  that's going to be followed by three years' supervised release

9  on the following conditions, first, the mandatory conditions:

10 The defendant will not commit another federal, state or local

11 crime.  The defendant will not illegally possess a controlled

12 substance.  The defendant will submit to one drug test within

13 15 days of release from imprisonment and at least two more

14 thereafter.  The defendant will cooperate in the collection of

15 DNA as directed by the probation officer.  The defendant will

16 participate -- excuse me -- will abide by the standard

17 conditions of supervision 1 through 12, along with the following

18 special conditions:  The defendant will participate in substance

19 abuse -- in an outpatient substance abuse treatment program

20 approved by the probation office, which may include testing to

21 determine whether he 's reverted to using drugs or alcohol, and

22 I authorize the release of available drug treatment evaluations

23 and reports to the treatment provider, including the presentence

24 report and the violation petitions.  Defendant will contribute

25 to the cost of services rendered based on ability to pay and

1  availability of third-party payment.

2        I am also going to add a condition of mental health/

3  anger management treatment.  Defendant will -- again, on an

4  outpatient basis -- the defendant will take any prescribed

5  medications unless otherwise directed by the health care

6  provider.  Defendant will be required to contribute to the cost

7  of services rendered based on ability to pay or availability of

8  third-party payment.  I authorize the release of the available

9  evaluations and reports to the mental health/anger management

10 provider, including the presentence report and the violation

11 petitions.

12        I am also reimposing the special condition that the

13 defendant shall submit his person, residence, place of business,

14 vehicle, papers, effects, computers, electronic communication

15 and data storage devices, cloud storage and media to search by a

16 probation officer with the assistance of law enforcement if

17 needed.  The search must be conducted at a reasonable time and

18 in a reasonable manner.  The search must be conducted upon

19 reasonable suspicion concerning a violation of the condition of

20 supervision or illegal conduct by the defendant.  Failure to

21 submit to search may be grounds for revocation.  The defendant

22 shall inform any other occupants that the premises may be

23 subject to search pursuant to this condition.

24        Does either lawyer know of any legal reason why the

25 sentence I've described should not be imposed?

1          MR. SULLIVAN:  No, Your Honor.

2          MR. WALLENSTEIN:  No, Your Honor.  But I request that

3    Your Honor order the supervised release term to run concurrently

4    with any parole term.  Otherwise, he is going to wind up being

5    under supervision forever.

6          THE COURT:  The supervised release term can be

7    concurrent with the New York state parole, but the sentence

8    won't be.

9          MR. WALLENSTEIN:  Thank you.

10          THE COURT:  The prison sentence won't be.

11          All right.  Then the sentence I have described is the

12    sentence I impose.  It's the sentence I find sufficient, but not

13    greater than necessary, to serve the purposes of sentencing.

14          Mr. Bamberg, you have the right to appeal your

15    conviction and sentence except to the extent you have given up

16    that right through your guilty plea or through your admissions

17    or your agreement with the government.  If you think you have

18    grounds to appeal and you are unable to pay the costs of an

19    appeal, you can apply for permission to appeal without paying.

20    Any notice of appeal must be filed within 14 days of the entry

21    of judgment of conviction, and Mr. Wallenstein will assist you

22    with that.

23          I really hope I don't see you again.  Part of the

24    reason why I am giving you 18 additional months is because I am

25    worried I will see you again, but part of the reason I am not

1  giving you 37 additional months is because I really hope you've

2  changed.  I really hope being a father has changed you.  And I

3  can tell you, you know, I gave you a lot less than the

4  government and probation wanted; and if I see you again, it's

5  going to tell me I should have listened to them, and I'm not

6  going to be happy.

7          Only you know -- maybe not only you know -- but you

8  know whether or not you did the other things you were accused of

9  that you weren't found guilty of, but we know that you did the

10 things you admitted to here, and you got a lot to work on, a

11 lot.  And you've got to let the people in probation help you

12 because, you know, you are going to be in your 40s when you get

13 out.  If you want to be one of those guys who just cycles in and

14 out of prison, never is there for his family, screws up his

15 kids, keep doing what you're doing.

16         THE DEFENDANT:  I'm not trying to do that, but at the

17 same time prison don't help somebody, either.

18         THE COURT:  Prison doesn't help you.  I am not sending

19 you there to help you.  If this was about helping you, this

20 would be a lot easier job for me, but I've got to worry about

21 the next guy who gets into a fender-bender with you.  I don't

22 expect prison to help you, but I expect when you get out and you

23 are on supervised release, you've got to let the probation

24 officers help you because they do help people.

25         But keep doing it like this, it's just going to be a

1   revolving door.  You know, when you -- when I sentenced you last

2   time, which was in -- this was July 24, 2012 -- and your lawyer

3   then told me that you had a dysfunctional family, and you had an

4   abusive father, and you left home at 16, and part of the way you

5   survived was by hanging with the wrong people.  But he told

6   me -- and I respect the lawyer you had last time -- he said this

7   arrest is different; that he had lots of conversations with you;

8   that you always took responsibility; that you changed your ways;

9   that you were no longer getting into fights and disrespecting

10  the staff at the jail; that you were learning to control your

11  temper; that you didn't want to do this again; that you didn't

12  have another bid in you; that you reconnected with your mother's

13  family, and you were trying to improve yourself.  And your

14  lawyer told me -- no, you told me, you were no angel.  You know

15  you did wrong.  You were willing to do what society requires,

16  and you're reconnecting with your family and trying to do what's

17  right.  I am sure you are disappointed in yourself.

18          THE DEFENDANT:  Yes, I am.

19          THE COURT:  And I am sure your family is disappointed

20  in you, and I am disappointed in you.  But the thing that really

21  matters is that you're disappointed in you.

22          I hope you will use the time inside to figure out why

23  you keep doing things that are self-destructive, not to mention

24  destructive to other people.  And I really, really hope I don't

25  see you again.  Luckily for you, your daughter is still going to

111022.1                          Proceedings                          26

1  be little when you get out.  It's not going to be easy to

2  reconnect, but, you know, she's not going to be a teenager.  She

3  is still going to be a little kid, and I hope you make every

4  effort while you are locked up to stay in communication with her

5  and make sure she gets the love that you didn't get as a kid.

6  But I can tell you, if when you get out and you do reconnect

7  with her, and you screw up again and you go back in, she is not

8  going to understand how you can love her and do both, and do

9  that.  So for her sake, as well as yours, as well as the

10  community's, I really do hope this is the last time.

11          I am going to dismiss specifications one, three, four,

12  five and six.

13          Is there anything else we should do this morning?

14          MR. SULLIVAN:  No, Your Honor.  Thank you.

15          MR. WALLENSTEIN:  No, Your Honor.  I would just put on

16  the record that I discussed the possibility of an appeal with

17  Mr. Bamberg.  He's indicated he does not wish to do so, but if

18  he contacts me in the next 14 days, I will file a notice on his

19  behalf.

20          THE COURT:  All right.  Thank you, Mr. Wallenstein.

21          Oh, and the writ is satisfied.

22          MR. WALLENSTEIN:  Judge, my client would like a copy

23  of today's transcript if the Court will order that.

24          THE COURT:  Well, you can order it if you have a

25  reason why it is necessary for adequate representation.

111022.1                         Proceedings

1              MR. WALLENSTEIN:  I understand.

2              THE COURT:  All right.  Thank you, all.

3                         -o0o-

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25